IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KSM ASSOCIATES, INC., | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ACS STATE HEALTHCARE, LLC, | : | No. 05-4118 |
|     Defendant. | : | |

**MEMORANDUM AND ORDER**

**Schiller, J.**                                                                                                                                                                                          **March 30, 2006**

       This action arises from a contractual dispute between Plaintiff KSM Associates, Inc. ("KSM") and Defendant ACS State Healthcare, LLC ("ACS"). KSM asserts breach of contract, breach of oral contract, quantum meruit, and promissory estoppel claims against ACS. ACS counterclaims for fraud/misrepresentation and breach of the implied warranty of fitness for a particular purpose. Presently before the Court is Plaintiff's motion to dismiss Defendant's Second Amended Counterclaims. For the reasons below, Plaintiff's motion is granted in part and denied in part.

**I.    BACKGROUND**

       KSM originally brought this action in the Bucks County Court of Common Pleas on July 12, 2005. (Notice of Removal ¶ 1.) On August 2, 2005, ACS removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441. (*Id*. ¶¶ 6-7.) KSM is a software consulting company incorporated in Pennsylvania with its principal place of business also in Pennsylvania. (*Id*. ¶ 3; Compl. ¶ 1.) ACS is a limited liability computer technology company with its principal place of business in Georgia. (Notice of Removal ¶ 4; Compl. ¶ 2.)

As viewed in the light most favorable to non-movant ACS, the facts are as follows. In March 2004, an ACS representative, Gloria King, asked KSM whether it was interested in partnering with ACS to facilitate ACS' bid on a contract offered by New Jersey. (Compl. ¶ 4 & Ans. ¶ 1.) ACS sought KSM's help to develop software known as ACS Premium, Collection and Management Module ("PCCM") for use in ACS' state healthcare administrative services business. (Compl. ¶ 5 & Ans. ¶ 1.) In May 2004, King emailed KSM's Vice President, Guy Henniger, to verify KSM's technical capability to perform the project. (Second Am. Countercls. ¶ 1.) Henniger responded that the system requirements were consistent with work KSM had previously completed and with KSM's projected new functionality. (*Id*. ¶ 2.)

ACS also sought a KSM company profile. (*Id*. ¶ 3.) In response to this request, Henniger sent an email in July of 2004 which highlighted: (1) KSM's prior association with the State of New Jersey, particularly related to healthcare initiatives; (2) KSM's domain expertise in areas of healthcare and life sciences, insurance, and government; and (3) KSM's current staff of "20+ employees." (*Id*.) Responding to ACS' query as to whether KSM was a "garage company" or a legitimate business capable of handling the project, Henniger indicated via email that KSM had two million dollars revenue and a staff of twenty-one people. (*Id*. ¶ 4.) On July 26, 2004, ACS sent KSM the system architecture requirements and system development life cycle for the project. (*Id*. ¶ 5.) ACS avers that KSM intentionally or recklessly misrepresented that it possessed the requisite skill, experience, and/or personnel to create the PCCM software. (*Id*. ¶¶ 6-7, 13.)

In August of 2004, ACS and KSM entered into a letter of intent agreement ("LOI") for system development services. (*Id*. ¶ 6.) The companies planned to negotiate and execute a formal, comprehensive agreement ("Services Agreement") setting forth their respective rights and

obligations. (Ans. Ex. A at 1 [hereinafter "LOI"].) However, to meet ACS' desired implementation schedule, the LOI provided that "KSM [would] begin staff hiring, project planning and system development activities prior to the execution of the Services Agreement." (*Id*.) KSM submitted project plans to ACS, and representatives for the parties held conference calls about the project. (Compl. ¶¶ 11-13 & Ans. ¶¶ 6-8.) ACS also input KSM into its internal invoice system, and KSM sent monthly invoices to ACS for payment amounts totaling $370,000. (Ans. ¶¶ 10-14.) In early November of 2004, KSM informed ACS that it had identified the full team for the project, hired additional personnel to begin working, and that the team would total sixteen people. (Second Am. Countercls. ¶ 10.) On or around November 22, 2004, ACS sent KSM a notice of termination letter requesting KSM to send its final invoice. (Ans. ¶¶ 16, 30.) KSM sent a final invoice to ACS for an additional $204,930. (*Id*. ¶ 17.) KSM also forwarded its work product to ACS. (*Id*. ¶ 18.)

ACS states that it paid KSM pursuant to the terms of the LOI, and denies that it must pay KSM the $574,950 sum demanded by KSM. (*Id*. ¶¶ 21, 24.) ACS asserts the LOI is a fixed-term services agreement that explicitly limits the maximum amount for labor and material to $100,000. (Second Am. Countercls. ¶ 18.) Moreover, ACS avers that the market value of the product KSM delivered to ACS was no higher than $75,000. (Ans. ¶ 22.) ACS further asserts that the software delivered by KSM failed to meet the standards and specifications outlined by ACS. (Second Am. Countercls. ¶¶ 9, 11, 14-15.) As a result, ACS spent additional time and resources obtaining and creating software that functioned as required. (*Id*. ¶ 11.) ACS alleges that KSM fraudulently induced ACS into entering the LOI by misrepresenting its skill, experience, and personnel. (*Id*. ¶¶ 6-7, 13.)

In its Answer filed on August 11, 2005, ACS asserted a single counterclaim seeking a declaration of the rights and obligations of the parties under the LOI. (Ans. Countercl.) On December 12, 2005, ACS filed amended counterclaims, adding claims against KSM for fraudulent inducement, fraud/misrepresentation, and breach of warranty of fitness for a particular purpose. (First Am. Countercls.) KSM filed a motion to dismiss ACS' amended counterclaims, but the Court declined to address the substantive arguments raised by KSM. Instead, the Court dismissed ACS' fraud counterclaims without prejudice for failure to plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b). (Order of Jan. 24, 2006.) The Court granted ACS leave to amend its fraud counterclaims, and ACS filed its second amended counterclaims on February 10, 2006. (*Id.*; Second Am. Countercls.) KSM filed a motion to dismiss ACS' fraud and breach of warranty counterclaims on February 22, 2006. (Mot. to Dismiss Second Am. Countercls.)

## II.   STANDARD OF REVIEW

In considering a motion to dismiss a counterclaim for failure to state a claim upon which relief may be granted, courts must accept as true all factual allegations plead in the counterclaim and must draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 272 (3d Cir. 2001); *see also United States v. Union Gas Co.*, 743 F. Supp. 1144, 1150 (E.D. Pa. 1990) (standard governing dismissal of counterclaim same as standard for dismissal of complaint). Courts are not obligated, however, to credit a party's "bald assertions" or "legal conclusions." *In re: Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997). A motion to dismiss will only be granted if it is clear that relief cannot be granted to the party under any set of facts that could be

proven consistent with the counterclaim's allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## III. DISCUSSION

### A. The Gist of the Action Doctrine Bars the Fraud Counterclaim

KSM seeks dismissal of ACS' fraud counterclaim because: (1) the gist of the action doctrine bars the fraud claim; (2) ACS has failed to plead fraud with particularity; and (3) the economic loss doctrine bars the fraud claim. (*See* Mem. of Law in Supp. of Mot. to Dismiss Second Am. Countercls. at 2-6.) As the Court's analysis of the gist of the action doctrine disposes of the fraud counterclaim, the Court need not address KSM's other bases for its motion.

The gist of the action doctrine bars a party to a contract from asserting a tort claim against the other party if the essential nature or "gist" of the claim is contractual. *See Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F. Supp. 2d 329, 340 (E.D. Pa. 2003). Although the Pennsylvania Supreme Court has not yet adopted the gist of the action doctrine, both the Pennsylvania Superior Court and numerous United States District Courts have predicted that it will.[1] *Id*. at 340 (referring to *Asbury Auto. Group LLC v. Chrysler Ins. Co.*, Civ. A. No. 01-3319, 2002 WL 15925, at *3 n.3 (E.D. Pa. Jan. 7, 2002); *Caudill Seed & Warehouse Co., Inc. v. Prophet 21, Inc.*,

---

[1] The Pennsylvania Superior Court has identified the various iterations of the gist of the action doctrine adopted by federal courts in this District as follows:
> These courts have held that the doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Etoll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 19 (Pa. Super. 2002) (citations omitted).

123 F. Supp. 2d 826, 833 n.11 (E.D. Pa. 2000); *Etoll*, 811 A.2d at 14; *Bash v. Bell Tel. Co. of Pa.*, 601 A.2d 825, 829 (Pa. Super. 1992)).

The gist of the action doctrine maintains the conceptual distinction between contract and tort actions; the former arise from the breach of duties imposed by mutual consensus while the latter arise from the breach of duties imposed as a matter of social policy. *See Plaum v. Jefferson Pilot Fin. Ins. Co.*, Civ. A. No. 04-4597, 2004 WL 2980415, at *4 (E.D. Pa. Dec. 22, 2004); *see also Etoll*, 811 A.2d at 14. Thus, in order to determine whether the gist of the claim is based in contract or tort, the court must examine the source of the duties allegedly breached. *See Bealer v. Mutual Fire, Marine & Inland Ins. Co.*, Civ. A. No. 04-5915, 2005 WL 1819971 (E.D. Pa. Aug. 1, 2005). The court must examine the nature of the action as a whole and assess the individual circumstances and allegations. *Advanced Tubular Prods., Inc. v. Solar Atmospheres, Inc.*, Civ. A. No. 03-0946, 2004 WL 540019, at *7 (E.D. Pa. Mar. 12, 2004) (*citing Etoll*, 811 A.2d at 19; *Am. Guar. & Liab. Ins. Co. v. Fojanini*, 90 F. Supp. 2d 615, 622 (E.D. Pa. 2000)). "A tort claim is maintainable only if the contract is 'collateral' to conduct that is primarily tortious." *H.H. Fluorescent Parts, Inc. v. DM Tech. & Energy, Inc.*, Civ. A. No. 04-1997, 2005 WL 2972986, at *3 (E.D. Pa. Nov. 3, 2005) (*quoting Caudill*, 123 F. Supp. 2d at 833); *see also Advanced Tubular*, 2004 WL 540019, at *6 (If the gravamen of the claim is "that a party failed to fulfill the terms of an agreement, the aggrieved party cannot try to mask its claim as a tort claim.").

Although the Court exercises caution in determining the gist of the action at this early stage, here it is evident that the gist of ACS' fraud counterclaim against KSM is contractual. *See Caudill*, 123 F. Supp. 2d at 834. ACS asserts that KSM breached its duty to properly perform system development services and create workable software for ACS. This duty was embodied in the LOI

6

signed by the parties in August of 2004. (*See* LOI at 1.) The court's concluding remarks in *Caudill* apply with equal force here: "[t]he agreement is far from collateral to the fraud claim; rather . . . the agreement is at the heart of [the] fraud claim, and therefore the gist of [the] fraud action is unmistakably contractual, not tortious." *Caudill*, 123 F. Supp. 2d at 834.

ACS further alleges that KSM fraudulently misrepresented that it had the "skill, experience and/or personnel" to fulfill its contractual obligations. (Second Am. Countercls. ¶¶ 6-7, 13.) This type of misrepresentation, regarding KSM's subjective qualifications and competency to perform the software development services, is inextricably intertwined with KSM's failure to perform under the LOI. *See Air Prods.*, 256 F. Supp. 2d at 342; *Advanced Tubular*, 2004 WL 540019, at *7. In *Air Products*, the court emphasized the distinction between representations of a party's objective and subjective qualifications. *Air Prods.*, 256 F. Supp. 2d at 342. Objective qualifications, such as certifications, implicate broader social policy matters, while subjective qualifications, such as a party's own belief as to its expertise and competence, simply relate to the failure to perform under the contract drafted between the parties. *Id.* at 342, 342 n.12. Thus, fraud claims based on misrepresentations as to a party's subjective competency to perform services or provide goods pursuant to an agreement are barred by the gist of the action doctrine. *See, e.g.*, *Advanced Tubular*, 2004 WL 540019, at *7 (gist of the action doctrine barred fraud claim based on breaching party's representation that it could perform heat treatment services in compliance with contractual specifications); *Caudill*, 123 F. Supp. 2d at 833-34 (gist of the action doctrine barred fraud claim against software company that provided software that failed to work as promised); *Sun Co., Inc. (R & M) v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 370 (E.D. Pa. 1996) (gist of the action doctrine barred fraud claim based on breaching party's assertion of its competency to perform

engineering services).

Accordingly, ACS' fraud counterclaim is barred by the gist of the action doctrine, and the Court grants KSM's motion to dismiss the fraud counterclaim.

### B. The Breach of Warranty Counterclaim Requires Further Factual Development

The implied warranty of fitness for a particular purpose, arising by operation of law under the Uniform Commercial Code ("UCC"), is codified at 13 Pa. Cons. Stat. Ann. § 2315. An implied warranty that goods sold are fit for a particular purpose arises "[w]here the seller at the time of contracting has reason to know: (1) any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods . . . ." 13 PA. CONS. STAT. ANN. § 2315 (2006). This implied warranty applies solely to the sale of goods. *See Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 675 (3d Cir. 1991). Goods are defined as "all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale." 13 PA. CONS. STAT. ANN. § 2105. The Third Circuit, noting that Pennsylvania embraces a broad definition of goods, has held that computer software qualifies as a good under the Code. *See Advent*, 925 F.2d at 675-76.

KSM does not dispute that a contract for the sale of computer software would be governed by the UCC. (*See* Mem. of Law in Supp. of Mot. to Dismiss Second Am. Countercls. at 7.) Rather, KSM asserts that the LOI is not a contract for the sale of software, but is a preliminary agreement for the performance of system development services. (*Id.* at 8.) Accordingly, KSM argues, the Code does not apply to the LOI. (*Id.*) In contrast, ACS characterizes the LOI as a contract primarily for software, with the services merely accompanying the goods. (ACS' Mem. of Law in Supp. of its Resp. at 3-4.) Without reaching any conclusions as to the nature of the agreement in this case, the

Court notes that a contract for the *development* of a software system is not identical to a contract for the *sale* of a software system. *See, e.g.*, *Pearl Invs., LLC v. Standard I/O, Inc.*, 257 F. Supp. 2d 326, 353 (D. Me. 2003) (distinguishing between creation of software from scratch and sale of preexisting software and holding that UCC does not apply to former).

In the absence of a complete factual record, the Court declines to assess whether the LOI represents solely a services contract, a mixed goods and services contract predominately for services, or a mixed contract predominately for goods.[2] Accordingly, KSM's motion to dismiss ACS' breach of warranty counterclaim is denied.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff KSM's motion to dismiss Defendant ACS' Second Amended Counterclaims is granted with respect to the fraud counterclaim and denied with respect to the breach of warranty counterclaim. An appropriate Order follows.

---

[2] Should the Court find that the LOI represents a mixed contract, the Court would need to assess which aspect predominates, by considering: (1) the contract's main objective or essence; and (2) the compensation structure of the agreement. *See Advent*, 925 F.2d at 676. In identifying the main objective of an agreement, courts have also found it helpful to examine: (1) the language and circumstances surrounding the contract; and (2) the interrelationship of the goods and services to be provided (i.e. whether one is incidental to the other). *See Conopco, Inc. v. McCreadie*, 826 F. Supp. 855, 868 (D. N.J. 1993) (citing cases).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KSM ASSOCIATES, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ACS STATE HEALTHCARE, LLC, | : | No. 05-4118 |
| Defendant. | : | |

### ORDER

**AND NOW**, this **30th** day of **March**, **2006**, upon consideration of Plaintiff's Motion to Dismiss Counts I and II of Defendant's Second Amended Counterclaims, Defendant's response thereto, and for the foregoing reasons, it is hereby **ORDERED** that:

1. Plaintiff's motion to dismiss (Document No. 26) is **GRANTED in part** and **DENIED in part** as follows:

   a. The motion to dismiss Count I (fraud) of Defendant's Second Amended Counterclaims is **GRANTED**. Count I is **DISMISSED with prejudice**.

   b. The motion to dismiss Count II (breach of warranty) of Defendant's Second Amended Counterclaims is **DENIED**. Plaintiff may revisit the issues raised with respect to Count II in a motion for summary judgment.

2. Plaintiff's motion to dismiss (Document No. 16) is **DENIED as moot**.

3. Plaintiff's motion for leave to file a reply (Document No. 19) is **DENIED as moot**.

BY THE COURT:

_/s/ Berle M. Schiller_

**Berle M. Schiller, J.**